

SO ORDERED,

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: July 18, 2016**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

**GEROLD KENT, JR.,**                                **CASE NO. 15-14450-NPO**

      **DEBTOR.**                                **CHAPTER 7**

**GREENPOINT AG, LLC**                                **PLAINTIFF**

**VS.**                                **ADV. PROC. NO. 16-01037-NPO**

**GEROLD KENT, JR.**                                **DEFENDANT**


### MEMORANDUM OPINION AND ORDER CONVERTING
### MOTION TO DISMISS INTO MOTION FOR SUMMARY JUDGMENT
### AND DENYING CONVERTED MOTION FOR SUMMARY JUDGMENT

    This matter came before the Court for hearing on June 16, 2016 (the "Hearing"), on the

Motion to Dismiss (the "Motion") (Adv. Dkt. 4)[1] filed by the defendant in the Adversary, Gerold

Kent, Jr. ("Kent"); the Memorandum in Support of Motion to Dismiss (Adv. Dkt. 7), filed by Kent;

the Response to Motion to Dismiss (the "Response") (Adv. Dkt. 13) filed by the plaintiff in the

Adversary, Greenpoint Ag, LLC ("Greenpoint"); and the Memorandum Brief in Support of

---

[1] The docket in the related bankruptcy proceeding, Case No. 15-14450-NPO (the "Bankruptcy Case"), will be cited as "(Bankr. Dkt. ___)." The docket in the above-styled adversary proceeding (the "Adversary"), will be cited as "(Adv. Dkt ___)."

Response to Motion to Dismiss (the "Greenpoint Brief") (Adv. Dkt. 14) filed by Greenpoint.   At

the Hearing, Glenn H. Williams ("Williams") represented Kent, and L. Bradley Dillard ("Dillard")

represented Greenpoint.   After fully considering the matter, the Court finds as follows:

## Jurisdiction

The Court has jurisdiction over the Adversary pursuant to 28 U.S.C. § 1334.   This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).   Notice of the Motion was proper under the

circumstances.

## Facts

Greenpoint is a retail seller of farming supplies, including "seed, fertilizer, and the like"

throughout Mississippi.   (Dkt. 1 at 2).   As part of this business, Greenpoint extends credit to

farmers on a "year to year basis, whereby farming related products are sold under an 'open

account' or pursuant to an advancing installment note."   (*Id.*; Greenpoint Br. at 1).   Greenpoint

decides whether to extend credit to potential customers based on their financial condition.   (*Id.*).

Kent is a farmer who from time to time purchased goods from Greenpoint on credit.

It is undisputed that Greenpoint and Kent had been engaged in a ten (10)-year long lending

relationship.   The background facts presented to the Court, however, begin near the end of the

parties' lending relationship, limiting the Court's understanding of the parties' prior relationship

and its ability to interpret the allegations in the pleadings in their full context.   In fact, the Court

lacks any information regarding the parties' relationship before 2013.   Thus, although the parties

agree that their relationship has been ongoing for ten (10) years, the current dispute appears to

involve only Kent's 2014 crops.

In April of 2013, Kent executed a security agreement (the "Security Agreement") (Compl.

Ex. A) in favor of Greenpoint to "secure the full, prompt and complete payment and performance of each and every debt, liability and obligation of every type and description, now owed, or at any time owed by [Kent] to [Greenpoint], whether now existing or hereafter arising, specifically including but not limited to indebtedness owed under open account number []."   (Compl. at 2-3). The Security Agreement was perfected through the filing of a UCC Financing Statement ("UCC1-F Form") on April 29, 2013.   (*Id.* at 3; Compl. Ex. B).   Greenpoint subsequently extended credit to Kent for the purchase of farming-related products for his 2013 crops.   (*Id.*). This Security Agreement also played a role in the credit extended to Kent for his 2014 crops. There is no information in the record regarding the nature of the parties' lending relationship prior to this point in time, which leaves numerous questions unanswered, including: was Greenpoint unsecured until the Security Agreement was signed?   Did Greenpoint extend credit to Kent every year until 2013?   Was there a credit limit, and, if so, what was it?   What was the total amount of the debt prior to 2013?   How did the parties evidence the debt secured by the Security Agreement?

The next piece of information presented to the Court concerns two (2) documents signed by Kent in connection with his obtaining credit for the purchase of goods for his 2014 crops. First, Kent signed a Customer Credit Application (the "Credit Application") (Compl. Ex. C) on December 30, 2013. The Credit Application provided that "the product or services ordered and received will be billed on invoices and monthly Statements . . . ."   (Credit Application at 2).   The Credit Application further provided that Kent "shall be liable for the price of said products and services as provided on said Invoices and Statements regardless of whether Applicant and/or Guarantor have signed a hand ticket or an invoice."   (*Id.*).   Pursuant to the Credit Application,

Kent was liable for products and services, and such liability was not dependent upon his "having signed any documentation, including but not limited hand tickets and/or invoices." (*Id.*). Second, "[i]n furtherance of the proposed business relationship between Greenpoint and Kent and in anticipation of the possible extension of credit by Greenpoint for his 2014 crop(s)," Kent submitted a Financial Statement (the "Financial Statement") (Compl. at 3; Ex. D)," on January 3, 2014. (Compl. at 3). The Financial Statement showed that Kent had a net worth of approximately $1,100,000.00. (Financial Statement at 1).

In sum, it is undisputed that Greenpoint extended credit to Kent on an open account basis after the parties executed the Security Agreement, which was perfected by filing the UCC1-F form. Specifically in connection with the extensions of credit for his 2014 crops, Kent later signed a Credit Application agreeing to the terms of the open account and submitted the Financial Statement indicating that his net worth was $1,100,000.00. The debt owed to Greenpoint for purchases made for the 2014 crops is evidenced by invoices Greenpoint sent to Kent pursuant to the terms of the Credit Application. Kent contends that he did not sign any of the invoices and disputes the amount of the debt asserted by Greenpoint. The parties disagree about whether the unsigned invoices prove that the debt exists. On April 10, 2015, Greenpoint initiated a lawsuit against Kent in the Circuit Court of Leflore County, Mississippi (the "State Court Action"), alleging that Kent failed to pay Greenpoint for goods purchased on an open account. (Mot. at 2). Greenpoint attached as an exhibit to the State Court Action the affidavit of Kevin Chambers (the "Chambers Affidavit"), a Greenpoint representative, attesting that Kent owed $695,195.01, plus additional accrued interest and/or late fees, on his open account with Greenpoint. (*Id.*). Kent subsequently commenced the Bankruptcy Case.

## I.      Bankruptcy Case

Kent filed a voluntary petition for relief pursuant to chapter 7 of the Bankruptcy Code on December 17, 2015 (the "Petition") (Bankr. Dkt. 1).   Kent filed his schedules (the "Schedules") (Bankr. Dkt. 1) contemporaneously with the Petition.   On Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 106 E/F) (Bankr. Dkt. 1 at 20), Kent listed Greenpoint as having an undisputed, nonpriority unsecured claim of $767,128.77.[2]   He also listed the State Court Action on the Statement of Financial Affairs for Individuals Filing for Bankruptcy.   (Bankr. Dkt. 1 at 32).

Greenpoint filed the Motion for Reclassification of Creditor, for Relief from the Automatic Stay and for Abandonment of Property from Debtor's Estate (Bankr. Dkt. 14) on February 2, 2016. Because the Schedules "erroneously" listed Greenpoint as unsecured, Greenpoint requested that it be reclassified as a secured creditor.   (*Id.*).   The Agreed Order Granting Motion for Reclassification of Creditor, for Relief from the Automatic Stay and for Abandonment of Property from Debtor's Estate (the "Agreed Order") (Bankr. Dkt. 32) was entered on March 3, 2016, reclassifying Greenpoint as a secured creditor.   The Agreed Order also provided that "the automatic stay affecting any collateral described or encompassed within the [Security Agreement] and the April 29, 2013 [UCC1-Fs] (if any) shall be immediately lifted, and such collateral (if any) shall be abandoned from Debtor's estate and subject to seizure or collection by Greenpoint." (Agreed Order at 3).

---

[2] Kent filed an amended Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 106E/F) (Bankr. Dkt. 25) on February 22, 2016, showing that Greenpoint's claim for $767,128.77 is disputed.

## II.     Adversary

In the Bankruptcy Case, the Order of Discharge (Bankr. Dkt. 38) was entered on April 26,

2016.   Greenpoint initiated the Adversary by filing the Complaint to Deny Discharge of Debtor

(the "Complaint") (Adv. Dkt. 1) on March 28, 2016.[3]   In the Complaint, Greenpoint objected to

Kent's discharge under § 523(a)(2)(B)[4] and requested that the Court enter a judgment against him

"for the principal sum of $695,195.01, pre and post judgment interest, and attorneys' fees," and

that the amount of the judgment be determined to be non-dischargeable.   (Compl. at 5).   In

support of its objection to discharge, Greenpoint alleged in the Complaint that Kent provided it

with the Credit Application and Financial Statement that showed Kent's net worth to be

approximately $1,100,000.00.   (Compl. at 3).   According to Greenpoint, it extended credit to

Kent based on the Financial Statement before discovering that the net worth reflected in the

Financial Statement "grossly overstated Kent's net worth particularly in the form of equipment he

owned, showing 'machinery and equipment' debt of only $120,000.00, with a corresponding value

of $993,500.00."   (*Id.*; Ex. D).

At the examination conducted pursuant to Rule 2004 of the Federal Rules of Bankruptcy

Procedure (the "2004 Examination") on March 8, 2016, Greenpoint claimed that Kent testified

---

[3] Pursuant to Federal Rules of Bankruptcy Procedure 7001 and 7003, a proceeding to determine the dischargeability of a debt is an adversary proceeding that a creditor must initiate by filing a complaint.   As long as an adversary proceeding challenging the dischargeability of a debt in a chapter 7 case is initiated during the pendency of the bankruptcy case, and within sixty (60) days after the date first set for the meeting of creditors under 11 U.S.C. § 341(a), the bankruptcy court has the authority to hear it.   4 COLLIER ON BANKRUPTCY ¶ 523.04 (16th ed. 2016).   The meeting of creditors was held on February 25, 2016.   The Complaint was therefore filed within sixty (60) days of the first meeting of creditors.   Additionally, Greenpoint filed the Complaint during the pendency of the Bankruptcy Case (prior to discharge and the closing of the case); therefore, the Complaint was timely.

[4] From this point forward, all code sections refer to the bankruptcy code found at title 11 of the U.S. Code, unless otherwise provided.

"that the equipment in fact had virtually no equity, despite the significant equity shown on the Financial Statement." (*Id.* at 3-4). Based on Kent's testimony at the 2004 Examination, Greenpoint asserted that the Financial Statement it relied upon "was materially false, and was executed with the intent to deceive Greenpoint into extending Kent credit for his farming operations." (*Id.* at 4).

Because "Kent knew or should have known at the time he executed the Financial Statement that the representations [he] made to Greenpoint therein were false and inaccurate, and would be relied upon by Greenpoint in making a decision whether to extend credit to Kent," Greenpoint alleged that the debt is non-dischargeable under § 523(a)(2)(B).[5] (*Id.*). According to Greenpoint, Kent filed the Financial Statement, which "(1) was materially false in nature, (2) was concerning his financial condition, (3) was relied upon by Greenpoint, and (4) was made or published by Kent with an intent to deceive Greenpoint as to his true financial condition and to fraudulently induce Greenpoint to sale [*sic*] goods and/or extend credit." (*Id.* at 4-5). Greenpoint alleged that because of the false representations in the Financial Statement, it suffered damages in excess of $695,195.01. (*Id.* at 5). Greenpoint also argued in the Complaint that Kent "is obligated to pay all reasonable fees and expenses incurred by Greenpoint in collecting any indebtedness owed by Kent" pursuant to the Credit Application. (*Id.*).

### A. Motion

In lieu of answering the Complaint, Kent filed the Motion on April 25, 2016, arguing that the Complaint should be dismissed because it fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), which is made

---

[5] From this point forward, all code sections refer to the Bankruptcy Code found at title 11 of the U.S. Code, unless otherwise provided.

applicable to the Adversary by Federal Rule of Bankruptcy Procedure 7012.   (Mot. to Dismiss at

1).   In the Motion, Kent argued that the Complaint is based on an open account and is therefore

barred by the Mississippi Statute of Frauds.   (*Id.* at 2).   Although Greenpoint attached Chambers

Affidavit attesting to the correctness of the outstanding balance of $695,195.01, Kent contended

that no invoices were attached supporting the balance Greenpoint claimed to be due.   (*Id.*).

According to Kent's sworn affidavit testimony (the "Kent Affidavit") (Mot. Ex. B),

Greenpoint produced "a large volume of invoices" through discovery in the State Court Action.[6]

According to the Kent Affidavit, he did not sign any of the invoices, and without being provided

with signed invoices, "it is impossible for me to determine what goods were actually delivered and

thus come to any conclusions with regard to any amount which may be due on open account to

Greenpoint."   (Kent Aff. at 2).   Kent testified that based on the total number of acres and the

crops he farmed in 2014, "it is impossible that I could have incurred charges with Greenpoint in the

amount as set forth by Greenpoint's Complaint."   (*Id.*).   Because none of the invoices produced

by Greenpoint in the State Court Action discovery were signed by Kent, "and because the amount

as claimed by Greenpoint so vastly exceeds the amount which could have been reasonably

necessary to produce Kent's 2014 crops, it is impossible for Kent to determine, concede or admit

what amount of indebtedness might have been owed and/or what goods were or were not actually

delivered."   (Mot. at 3).

Kent argued in the Motion that Greenpoint must first prove that the debt was actually owed

in order to succeed under § 523, which it cannot do.   (*Id.*).   According to Kent, the Complaint

---

[6] Kent filed the Amended Affidavit of Gerold Kent (Adv. Dkt. 15) and the Amended
Affidavit of Gerold Kent (Adv. Dkt. 16) on June 14, 2016.   Those documents appear to be
substantively identical to the Kent Affidavit.

"makes the summary conclusion that the claimed indebtedness of $695,195.01 is owed, without any supporting documentation or even the detailed statement of account, setting forth the basis for the amount claimed or alleged to be owed." (*Id.*). Kent also argued in the Motion that the Mississippi Statute of Frauds provides that a contract for the sale of goods for the price of $500.00 or more is not enforceable unless there is a sufficient writing evidencing the contract, and it is signed by the party against whom enforcement is sought. (*Id.* at 4) (citing MISS. CODE ANN. § 75-2-201). Because each sale of goods exceeded $500.00, Kent argued that a signed writing was required, and Kent did not sign the invoices. (*Id.*). "Unless Greenpoint can produce some writing (in the form of signed invoices) to support Kent's claimed indebtedness to Greenpoint, it's [*sic*] claim is subject to the statute of frauds, unenforceable under state law and thus Greenpoint cannot meets its threshold showing that the debt is <u>owed</u>." (*Id.*).

## B. Response and Greenpoint Brief

Greenpoint filed the Response on May 16, 2016, arguing that the statute of frauds does not apply to open accounts like the account in question, and, as a result, the Motion should be denied. (Resp. at 4). Citing several Mississippi cases, Greenpoint argued that because the statute of frauds does not apply to open accounts, each invoice it sent to Kent did not have to be signed. (Greenpoint Br. at 5-6). Greenpoint also argued that Mississippi courts have distinguished between a contract for the sale of goods and an open account arrangement as it pertains to the statute of frauds. (*Id.* at 6).

Even if the Court were to find that the statute of frauds does apply to open accounts, Greenpoint raised four (4) defenses/exceptions. First, Kent agreed to be liable for the products purchased in the Credit Application. (*Id.* at 7) (citing Compl. Ex. C). According to Greenpoint,

the Credit Application provided "that liability for said products and services is NOT dependent upon Applicant and/or Guarantor having signed any documentation, including but not limited to hand tickets and/or invoices." (*Id.*) (citing Compl. Ex. C. at 2).   "Section (a) and (b) of the Credit Application further delineate that Kent would be billed for all products purchased, and that he agreed to be liable for such purchases regardless of whether he signed either a hand ticket or invoice."   (*Id.*) (citing Compl. Ex. C).   Greenpoint contended that these contractual provisions, signed by Kent, constituted a waiver of "any defense which might otherwise exist under the statute of frauds."   (*Id.*).

Second, Greenpoint argued in the Greenpoint Brief that if a contract is between merchants, the signature requirement is waived; therefore, because Kent and Greenpoint are merchants, Kent did not have to sign each invoice, even if the statute of frauds is applicable.   (*Id.*); MISS. CODE ANN. § 75-2-201(2).   Kent is a merchant as defined in MISS. CODE ANN. § 75-2-104, according to Greenpoint, because "he is a long time farmer who purchased the product from Greenpoint for a commercial purpose . . . and therefore falls within the merchant definition; as such his receipt of monthly invoices verifying the debt in question satisfies any statute of frauds requirement."   (*Id.* at 7-8).

Third, Greenpoint maintained that the integration of the Credit Application and invoices satisfied any writing requirement under the statute of frauds.   (*Id.* at 8).   Fourth, Greenpoint contended that an otherwise unenforceable contract is actually enforceable under MISS. CODE ANN. § 75-2-201(3)(c) where the goods have been received and accepted.   (*Id.*).   Because Kent has never claimed that he did not receive the goods from Greenpoint and utilized them in his farming operations, "[t]his fact alone removes Kent's debt from the statute of frauds."   (*Id.*).

### C.  Hearing

At the Hearing, Williams argued that Kent has always paid his debt and has never exceeded his credit limit.  Williams argued, however, that Kent learned in 2014 that he had a balance exceeding $695,000.00, even though Greenpoint did not tell him that he had exceeded his credit limit.  According to Williams, the Debtor believes that he did not incur debt in the amount Greenpoint claims.  Further, Williams argued that Greenpoint bears the burden of proving by a preponderance of the evidence that the debt is actually owed, which it failed to do.  Greenpoint only attached a balance statement with a supporting affidavit, and offered no proof that Kent owes the alleged balance, according to Williams.   Even if the statute of frauds is inapplicable, Williams contended that Greenpoint is still required to prove the underlying debt, which it failed to do.

Dillard argued at the Hearing that it is premature at the Motion stage for Greenpoint to be required to submit all evidence it intends to use to prove the total amount of the debt.   According to Dillard, Kent never disputed the fact that he received the goods or contended that he owes nothing.   The question is the exact amount that Kent owes to Greenpoint, which is a fact question that will be proved at trial, according to Dillard.   Dillard claimed that in order to state a claim on an open account, the plaintiff is required only to produce accounts and supporting testimony, which it did, and that there is no requirement that there be a signed writing.

Even if the Court does find that the statute of frauds applies in this case, Dillard argued that the Credit Application and invoices satisfy the statute of frauds.   Additionally, because Kent is a merchant who sells crops via interstate commerce, the signed writing requirement is waived.  Kent's status as a merchant, which would void the signed writing requirement, is at least a mixed question of law and fact, according to Dillard.   It was Dillard's argument, therefore, that the

Motion should be denied because the Complaint states sufficient facts which if true, support a cognizable claim for relief.

## Discussion

Because Kent submitted evidence outside of the pleadings with the Motion, the Court must first consider whether to convert the Motion into a motion for summary judgment.   Then, the Court will determine the proper disposition of the surviving motion.

## I.       Procedural Posture

When Kent filed the Motion pursuant to Rule 12(b)(6), he submitted the Kent Affidavit and the Chambers Affidavit to support his claim that the Complaint should be dismissed.   Rule 12(d) of the Federal Rules of Civil Procedure, which is made applicable to the Adversary by Federal Rule of Bankruptcy Procedure 7012(b), provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside of the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."   FED. R. CIV. P. 12(d).   Although Kent moved to dismiss the Complaint, bankruptcy courts have the power to enter summary judgment *sua sponte.   Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).   Accordingly, "[w]hen a movant submits matters outside the pleadings along with its motion to dismiss, the court must convert a motion to dismiss into a motion for summary judgment."   *Hancock Bank v. Bates (In re Bates),* No. 09-05092, 2010 WL 2203634, at *13 (Bankr. S.D. Miss. May 27, 2010) (citing *Bolen v. Dengel (In re Dengel)*, 340 F.3d 300, 312 (5th Cir. 2003)).   Similarly, in *Jaso v. Coca Cola Co.,* the Fifth Circuit Court of Appeals held that when a movant submitted evidence to supplement his motion to dismiss, the district court properly converted the motion to dismiss into a motion for summary judgment.   537 F. App'x 557, 560-61 (5th Cir. 2013).

In *In re Dengel,* the defendant attached a supporting affidavit to its motion to dismiss.   340 F.3d at 312.   The Fifth Circuit noted that "[w]hen matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."   *Id.* (citing *Burns v. Harris Cty Bail Bond Bd.*, 139 F.3d 513, 517 5th Cir. 1998)).   Accordingly, the Fifth Circuit construed the defendant's motion to dismiss as a motion for summary judgment, and applied the applicable standard of review.   *Id.*   When confronted with this issue at the Hearing, Williams admitted that the Motion should "probably" be construed as a motion for summary judgment instead of a Rule 12(b)(6) motion to dismiss. Although a dismissal under Rule 12(b)(6) can be based upon an affirmative defense (like the statute of frauds), the defense must appear clearly on the face of the pleadings.   *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986).   Here, however, the Complaint is replete with references to written documents signed by Kent.

Generally, when a court converts a motion to dismiss into a motion for summary judgment, it is required to provide notice and the opportunity for a hearing.   *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC,* 255 F. App'x 775, 784 (5th Cir. 2007).   Courts are, however, required to provide such notice and the opportunity for a hearing only when *granting* summary judgment *sua sponte.   Id.*; *see also Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp.,* 992 F.2d 1398, 1403 (5th Cir. 1993) (holding that the district court's grant of summary judgment "without notice that the court contemplated ruling on the motion for summary judgment was an abuse of discretion," but the error was harmless because defendant's response and affidavits failed to present a genuine dispute of material fact).

The Court finds that because Kent attached to the Motion the Kent Affidavit and the

complaint in the State Court Action, which contained the Chambers Affidavit, and because the

Court does not exclude this evidence, he presented evidence outside of the pleadings. The Court is

therefore required to convert the Motion into a motion for summary judgment.   Fed. R. Civ. P.

56(d).   While notice to the nonmovant is required if the Court converts the Motion and grants

summary judgment, notice is not necessary if the Court converts the Motion but denies summary

judgment.   Accordingly, the Court must determine whether summary judgment should be

granted, and, if so, whether further notice is required.

## II.      Genuine Dispute of Material Facts

Under Federal Rule of Civil Procedure 56, which is made applicable to the Adversary by

Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate, when viewing the

evidence in the light most favorable to the nonmoving party, the pleadings, depositions, answers to

interrogatories, and admissions, together with affidavits, if any, show that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322-23.   "If a party fails to properly support an assertion

of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the

court may . . . consider the fact undisputed for purposes of the motion   . . ." FED. R. CIV. P.

56(e)(2).

Ultimately, the Court's role is to "determine whether there is a genuine issue for trial," not

to "weigh the evidence and determine the truth of the matter." *Fogerty v. Condor Guar., Inc. (In

re Condor Ins. Ltd.),* No. 07-05049-NPO, 2012 WL 1655851, at *7 (Bankr. S.D. Miss. May 10,

2012) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 590 (1992) (citing *Anderson v. Liberty

Lobby, Inc.,* 477 U.S. 242, 248 (1986)).   According to the United States Supreme Court, it is not a

heavy burden for a nonmovant to show that that there is "only a 'genuine issue' of material fact . . . ." *Lujan,* 504 U.S. at 590.    A genuine dispute exists if the evidence is such that a verdict could reasonably be returned for the nonmoving party.    *Id.* (citing *Anderson,* 477 U.S. at 248).

Based on the foregoing law, there are two (2) elements that must be met in order for summary judgment to be appropriate:    (1) there must be no genuine dispute of the material fact; and (2) the undisputed facts are such that the movant is entitled to judgment as a matter of law.    In determining whether a fact is material, the Court should look to the substantive law.    *Anderson,* 477 U.S. at 248.    "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.    Factual disputes that are irrelevant or unnecessary will not be counted."    *Id.* "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."    *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)).    The Court must, therefore, determine whether a genuine dispute of material fact exists at this stage so that summary judgment should be denied and the parties should proceed with discovery.[7]

The Court has before it a stack of documents and a dispute regarding the applicability of the statute of frauds.    As the Court previously discussed, it lacks any evidence regarding the parties' ten (10)-year lending relationship before April 2013, when Kent signed the Security Agreement.    The Court, therefore, has no context in which to consider the Motion.    If the Court cannot understand the nature of the parties' lending relationship, it cannot fully consider whether the statute of frauds applies to the debt incurred as to the 2014 crops at this early stage of the Adversary.    The parties appear to agree that certain written documents evidence their

---

[7] Although the parties conducted some discovery in the State Court Action, Dillard pointed out at the Hearing that no discovery has been conducted in the Adversary.

relationship; they do not contend, for example, that their relationship rested on a handshake.   The

Court, however, does not know if the writings before it are the only ones that evidence the parties'

relationship or if other writings exist that might bring clarity to the present dispute.

This Court has noted that "it has the discretion to deny motions for summary judgment and

allow parties to proceed to trial so that the record might be more fully developed for the trier of

fact." *Hall v. Desper (In re Desper),* No. 09-05051-NPO, 2010 WL 653864, at *6 (Bankr. S.D.

Miss. Feb. 9, 2010) (citations omitted).   Accordingly, this Court has previously denied summary

judgment to allow the parties to more fully develop the record.   *Good Hope Constr., Inc. v. RJB*

*Fin., LLC (In re Grand Soleil-Natchez, LLC)*, No. 12-00013-NPO (Dkt. 437), at *33 (Bankr. S.D.

Miss. Aug. 13, 2013).   At this juncture, the Motion should be denied so that the parties have an

opportunity to develop the record further and provide facts to put their lending relationship into

context so that the Court is able to determine whether the statute of frauds applies, and, if it does,

whether an exception is applicable.   The discussion that follows provides just two (2) of many

examples of genuine disputes of material fact that preclude the Court from granting summary

judgment at this stage.

### A.  Factual Dispute Regarding Applicability of Statute of Frauds

Typically, "all debts arising prior to the filing of the bankruptcy petition will be

discharged." *United States v. Coney,* 689 F.3d 365, 371 (5th Cir. 2012) (citation omitted).   "[T]o

ensure that the Bankruptcy Code's 'fresh start' policy is only available to 'honest but unfortunate

debtor[s],'" however, "Congress has provided that certain types of liabilities are excepted from the

general rule of discharge."   *Country Credit, LLC v. Tillman (In re Tillman*), No. 12-60031-KMS,

2012 WL 5993712, at *2 (Bankr. S.D. Miss. Nov. 30, 2012) (citing *Coney,* 689 F.3d 365 at 371)).

In the Complaint, Greenpoint alleged that the debt Kent owes is non-dischargeable under § 523(a)(2)(B).   (Compl. at 4).

Section 523(a)(2)(B), which is intended to protect victims of fraud, provides that a debtor may not discharge debt "for money, property, services, or an extension, renewal, or refinancing of credit," to the extent that the debtor obtained it by using a statement in writing "(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."   11 U.S.C. § 523(a)(2)(B).   In order for a plaintiff to prevail on a claims under § 523(a)(2)(B), he or she "bears the burden of proving each of the four required elements by a preponderance of the evidence."   *In re Tillman*, 2012 WL 5993712, at *3 (citing *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991)).   In the Complaint, Greenpoint alleged that Kent committed fraud by providing false information in the Financial Statement so that the debt of $695,195.01 should not be discharged under § 523(a)(2)(B).

In the Motion, Kent argued that Greenpoint failed to meet its burden because it failed to prove that the debt was actually owed because of the statute of frauds.   Kent has the burden to prove his affirmative defense that the Mississippi Statute of Frauds bars Greenpoint's claim by a preponderance of the evidence.   *See, e.g., Britt v. Travelers Ins. Co.,* 566 F.2d 1020, 1021 (5th Cir. 1978); *Bradberry v. Jefferson Co.,* 732 F.3d 540, 547 (5th Cir. 2013).   Accordingly, he bears the burden not only to prove that the Mississippi Statute of Frauds bars Greenpoint's claims, but also that no exception applies.   *See High Symons Group, plc v. Motorola, Inc.,* 292 F.3d 466, 469-70 (5th Cir. 2002) (holding that party arguing for the application of the statute of frauds bears

Page 17 of 22

the burden to prove that it applies and that no exceptions are applicable).

The Court finds that there is a genuine dispute of material fact regarding the underlying debt.   Discovery will be necessary in order for the parties to determine whether the debt survives the statute of frauds, and, if it does, the actual amount of the debt owed.   According to Kent, he did not sign any of the invoices, and, therefore, he is unable to verify the debt.   As Greenpoint pointed out, however, Kent does not dispute that he purchased some goods on credit from Greenpoint for his 2014 crops.   The dispute is over the existence and/or amount of the outstanding debt.   The dispute over the underlying debt is genuine because Greenpoint identified evidence (the Credit Application) that, if proven, could lead the Court to reasonably find for Greenpoint.   Additionally, this fact is material because, under § 523, if the underlying debt does not exist, Greenpoint does not have a claim under § 523.   Accordingly, the Court finds that there is a genuine dispute of material fact regarding the underlying debt, and, therefore, summary judgment would be inappropriate.

### B.  Factual Dispute Regarding Merchant Exception to Statute of Frauds

As the Court previously noted, the Court will consider the substantive law in determining whether facts are material. *Anderson,* 477 U.S. at 248.   Kent argued that Greenpoint cannot prove the existence of the underlying debt because there is no signed writing that satisfies the statute of frauds.   Greenpoint alleged that the statute of frauds does not apply to the parties' transaction and, therefore, does not bar its claim. Even if the statute of frauds does apply, however, Greenpoint argued that the Credit Application and invoices serve as the writings required to satisfy the statute of frauds.   It also argued that Kent and Greenpoint are both merchants, so the statute of frauds does not bar its claim.

While the applicability of the statute of frauds is a mixed question of law and fact, its

ultimate resolution hinges on the facts.   At this stage, before the parties have even engaged in

discovery, there is *at least* one genuine dispute of material fact: whether Kent and Greenpoint are

merchants.[8]   If both parties are merchants, the Mississippi Statute of Frauds may not require a

signed writing, depending on the particular facts of the parties' transaction.

 A merchant "deals in goods of the kind or otherwise by his occupation holds himself as

having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom

such knowledge of skill may be attributed by his employment . . . ."   MISS. CODE ANN.

§ 75-2-104.   The Mississippi Statute of Frauds provides that if a transaction occurs between

merchants, the signed writing requirement is satisfied if, within a reasonable time, "a writing in

confirmation of the contract and sufficient against the sender is received and the party receiving it

has reason to know its contents," unless that party provides "written notice of objection to its

contents" within ten (10) days after it is received.   MISS. CODE ANN. § 75-2-201(2).   Greenpoint

argued that because both parties are merchants, the statute of frauds is satisfied even if Kent did not

sign an invoice each time he received goods.   At the Hearing, however, Williams argued that Kent

is not a merchant under MISS. CODE ANN. § 75-2-104.

 The Mississippi Supreme Court has held that whether a person is a merchant is "a mixed

question of law and fact."   *Vince v. Broom,* 443 So. 2d 23, 28 (Miss. 1983).   Whether a farmer is

a merchant depends "largely on the factual circumstances of each case."   *Dawkins & Co. v. L&L

Planting Co.,* 602 So. 2d 838, 843 (Miss. 1992).   While "some farming operations are worth

---

[8] There are several other potential fact questions that are appropriate for resolution at trial, including, but not limited to: (1) whether the signed Credit Application satisfies the statute of frauds; (2) whether there is an integration of documents that satisfies the statute of frauds; and (3) whether the goods were accepted so that the contract is enforceable under MISS. CODE ANN. § 75-2-201(3)(c).   The resolution of each of these issues will turn on the facts and evidence presented at trial.

millions of dollars," others "are performed by such casual and inexperienced sellers that they would not be included within the merchant definition." *Vince,* 443 So. 2d at 25. Accordingly, the Mississippi Supreme Court concluded that "farmers as an occupation may be a merchant class where their particular factual situations falls into the definition of a merchant as defined in Mississippi Code Annotated Section 75-2-104." *Id.*

Whether Kent falls within the definition of MISS. CODE ANN. § 75-2-104 is a genuine dispute of material fact. This Court could reasonably conclude that Kent is a merchant and, therefore, the signed writing requirement of the Mississippi Statute of Frauds, to the extent that it applies, is satisfied despite the fact that Kent did not sign each invoice. Whether Kent is a merchant is a material fact because, if he is, then the statute of frauds is satisfied and Greenpoint's claim is not barred, meaning the Court could reasonably find for Greenpoint. The presence of a genuine dispute as to whether Kent is a merchant within the meaning of MISS. COE ANN. § 75-2-104 defeats summary judgment. Thus, it is unnecessary for the Court to analyze whether Greenpoint has identified other genuine disputes of material fact, including whether the Credit Application is a signed writing that satisfies the statute of frauds, whether there is an integration of documents that satisfies the statute of frauds, and whether Kent accepted the goods so that the contract is enforceable.

## Conclusion

Because Kent attached the Kent Affidavit and the Chambers Affidavit to the Motion, the Court converted the Motion into a motion for summary judgment. The Court may only grant summary judgment if there is no genuine dispute of material fact and the evidence is such that Kent, as the movant, is entitled to judgment as a matter of law. The Court was given only the last

chapters of the parties' ten (10)-year lending history with no evidence regarding the status of their relationship before 2013.   The Court, therefore, finds that summary judgment should be denied so that the parties can further develop the record and the Court is able to determine whether the statute of frauds applies to the debt.

There is, at least, a genuine dispute of material fact regarding the debt Kent allegedly owes to Greenpoint, and the amount of any such existing debt.   Further, even if the Court assumes Kent's argument is correct that the statute of frauds is a viable defense to Greenpoint's claim, there is *at least* one additional genuine dispute of material fact.   If Kent is a merchant, which is a highly factual inquiry, the writing requirement of the statute of frauds may be satisfied even if Kent did not sign each invoice.

Ultimately, whether the debt owed to Greenpoint is non-dischargeable under § 523(a)(2)(B) will depend on addition facts.   The Court will be required to determine whether Greenpoint proved all four (4) elements of non-dischargeability by a preponderance of the evidence, including the existence and amount of the underlying debt.   In connection with the fourth element, the Court will also determine whether Kent proved by a preponderance of the evidence that the statute of frauds applies, and if he does, whether the facts are such that an exception applies or that the writing requirement is otherwise satisfied.   Because the Court finds that summary judgment should be denied, no further notice to Greenpoint is required as to the Court's conversion of the Motion.

IT IS, THEREFORE, ORDERED that the Motion is hereby converted into a motion for summary judgment.

IT IS FURTHER ORDERED that the Motion is hereby denied without prejudice.

IT IS FURTHER ORDERED that Kent hereby has fourteen (14) days from this Order in which to file a responsive pleading.

##END OF OPINION##